20-12665 Ms. Breschke for the Appellant, Ms. Breschke Good morning. May it please the Court. I represent the Plaintiff's Appellants, including Support Working Animals. The only issue before this Court is whether the Attorney General of Florida is a proper defendant in this action, which challenges a constitutional amendment against wagering on greyhound racing. Your Honors, the District Court got it right the first time when it ruled that the Attorney General was the proper defendant. And the Court gave a lot of good reasons for that conclusion, based on solid precedent at pages 20-26, docket entry number 46. The Order set forth a thorough analysis of the AG's statutory, constitutional, and residual common law powers, concluding with the fact that the AG was the proper defendant. Counsel, can I ask you a question? You filed a response to the Attorney General's Notice of Supplemental Authority, and in that letter, you appear to concede that the claim should have been brought against the Florida Gaming Control Commission and the Governor. Are you still maintaining that the Attorney General is the proper defendant? Yes, we do, Your Honor. And it is clear now, even more than ever, with SB4 and SB8, that the Attorney General had even more impact. But I do submit that this Court is charged with reviewing what happened at the time of the appeal, because as a Court of Review in front of the trial court, but we do believe that the Attorney General, more than ever, based on those changes, which is just very recent, will be involved. Why isn't this just Lewis reducts? Doesn't this look just like our in-bank opinion in Lewis? I mean, what's the imminent threat of enforcement here? Well, the imminent threat of enforcement... By the Attorney General, I should say. By the Attorney General. Well, first of all, Lewis, I believe, is distinguishable because it was a private action. So we do believe that that is distinguishable. But with regards to the inner injury, and you're talking about the Article III standing, with regards to the injury, the imminent threat is the economic loss and the penalties. And it's clear that... Well, I think, okay, just so we're clear, I mean, I think let's grant you injury. You know, there are three steps to standing. We'll grant you injury. This is what the Court did in Lewis. We said, plaintiff, we're going to give you injury. Now, let's talk about traceability and redressability. And I don't really see why this isn't just like Lewis on those two counts. It's true in Lewis that there happened to be a private right of action as between employees and employers, but the defendant before the court was the Attorney General, and the in-bank court said, wrong defendant, because there is no imminent threat of enforcement by the Attorney General, and therefore, an injunction running against the Well, we think Lewis is an opposite because it involved the private enforcement. The local ordinance gave the aggrieved employees a private right of action against their employers, and that's obviously because they didn't pay the hourly wage higher than the state minimum. Well, I guess what I'm saying is, so the question before the court in Lewis and the question before the court here, is there standing to pursue an action against the defendant before the court? There, it was the Attorney General. Here, it's the Attorney General. There, we said no imminent threat of enforcement by the Attorney General. Here, I'm asking, where is the imminent threat of enforcement by the Attorney General? It so happens in Lewis that like, sort of like, don't worry, there is a cause of action against the employers, but the question still fundamentally is the same. Do we have the right defendant in front of us? I think you do because I think you have the three things, and again, the traceability is really the issue here, right? How does the Attorney General prosecute an action? I'm sorry? How does the Attorney General prosecute an action? Let's assume that there was a penalty. Now I know there's a penalty in place now that the legislature has done, but who brings this action? It's not the Attorney General. Do they have those enforcement powers? They do not. Well, I do believe, again, we were asking for an injunction to enjoin from that law being enforced, and the Attorney General does have power over the state attorneys by statute. In fact, it's in 1608. They do not have general authority to prosecute general offenses, correct? No, but they can direct. That belongs to the state attorneys who are elected. Correct, but I think the distinguishing factor here, and if we talk about Jacobson versus here, in Jacobson, you had the supervisor of election, and by statute, and there was a specific statute in the supervisor of election, 99.121. That said in part, the names of such persons shall be printed by the supervisor of elections upon the ballot in their proper place as provided by law. That statute, and obviously this court said, hey, the supervisor of election was not enjoined, so that can't go forward because the Secretary of State couldn't dictate to the supervisor of election because this, on that 101 point. Are you suggesting that the Attorney General, that Ashley Moody, can direct Kathy Fernandez-Rundle to file a lawsuit, a criminal prosecution? I'm not suggesting that she can direct her to file a prosecution, but I am suggesting if the court enjoined the Attorney General from enforcement, that the Attorney General by statute under 1608, because they have direction and supervision over the state attorney, and they hire the statewide prosecutor and can fire the statewide prosecutor, I am suggesting that that, enjoining the Attorney General, would then allow the statute that we do have at operation in this case, 1608, that would allow by statute, and it's a shall, it's a must, they must take direction from the Attorney General. In Jacobson, they couldn't take direction from the Secretary of State because the law, 99.121, prohibited it, and when the court enjoins a statute from being enforced, as this court has said, it doesn't erase it from the books, it just enjoins it from being enforced. While the supervisor of elections could not take that direction from the Secretary of State, and the supervisor of election was not a proper party, in fact, in this case, the Attorney General, if enjoined from enforcement, and this is a government enforcement of a interest that is decimating an industry, by the way, and they can, the Attorney General can say to the state attorneys, direct you, because they can talk about discharging of duties, and they can take direction from the Attorney General, and that's the argument, Your Honor, with regards to that piece of it. If we affirm the district court's dismissal without prejudice, I'm assuming you're going to refile the lawsuit, who are you filing it against? Well, I believe it would be refiled against the Attorney General, against ... No, if we affirm the district court's dismissal on that point, on the Attorney General, who are you filing? Your response to the 28-J letter suggests you've got the Florida Gaming Control Commission now. We have the Gaming Control Commission and the Governor, but that was also in the first motion to dismiss, the Governor was taken out of that as well. But that was before the statutes had been passed. Correct. So we're looking at sort of a blank slate, but we're not anymore. Correct. We're not anymore looking at a blank slate, but I think it's an important issue for the court to determine, because at the time, when there was this pre-enforcement, I believe the court got it right the first time when it found that the Attorney General could be enjoined and had the traceability and the redressability, because by enjoining ... Judge We had the traceability with the Attorney General at the time, and the redressability by the injunction would stop the enforcement. And if I may also want to mention the statewide prosecutor. The statewide prosecutor, as I mentioned, is hired and can be discharged by the Attorney General. And in fact, now with the new legislation, the statewide prosecutor is going to be even more important here, because the statewide prosecutor is going to be ... It strengthens our case, because the statewide prosecutor ... There's a gambling commission that's going to be created and housed within the office of the Attorney General. And even though not subject to the control by the AG, the prosecutions for the offenses will fall under the purview of the statewide prosecutor. Has the statewide prosecutor made any noises about enforcing this law? Any imminent threat of enforcement coming out of the statewide prosecutor's office? Well, not that I'm aware of. The reason I ask is that, among other things, in Lewis, we said that there's no imminent threat of enforcement. We said that there is a specter of enforcement, and we made clear that specter is here in the apparition sense. So is there anything more here than a specter of enforcement by either the Attorney General or the statewide prosecutor? Well, let me try to answer that with the statute under SB4. It shows that the Attorney General has a close connection with the future enforcement of the statewide prosecutor and the gaming commission. The commission, again, is created within the office of the Attorney General, and SB4 expands the powers of the statewide prosecutor over gambling. It says the gambling commission will refer violations either to the attorneys or the statewide prosecutor. So they're going to refer those violations to the statewide prosecutor, and then the gaming commission will receive and review violations reported by a state or law enforcement agency, the Department of Law Enforcement, the Department of Legal Affairs, Office of the Attorney General. So I do believe that there is an imminent threat as this rolls forward for prosecution. What's the evidence of the imminent threat other than a law on the books that may or may not sort of put people in charge of enforcement? I mean, the reason that this matters is that you're bringing a pre-enforcement challenge. You don't contend that this law has been enforced against you, of course. You're worried that it might be. But so you've brought a pre-enforcement challenge, so we have standing issues that sort of verge into ripeness issues about whether or not this is, like, too soon. Federal courts have an anxiety about things like this, and so we worry that this is too soon. And on the standing side, we ask you to demonstrate imminence. And on the ripeness side, we ask you to demonstrate, you know, sort of that this is sort of on your doorstep. Well, I think that the trial judge got it correct in the first motion to dismiss when he stated, I believe it's on page 6 of that order, and he started with the analysis that they shouldn't have to sit on their hands, the plaintiffs here. The way that this came about, there was no penalty provision drafted, although it was contemplated, but the injury is there. They've already lost, there's an economic loss, they have lost employees, and I think the issue is that because the way the legislation was drafted and the Amendment 13 was drafted, that there was going to be enforcement because the penalty provision was going to be there, that that was considered imminent. And I think that's where you can say it would be wholly inequitable to say that they have to just wait until this enforcement occurs. The legislature may not have acted as quickly as they did, and at the time of this appeal, we didn't know if they were going to act or ever. So our party, the plaintiffs, they know that they're not allowed to do this, so they can't do this. They don't know how it's going to be enforced, but they know if they do it, they're going to suffer some civil or criminal penalty. So I think that's how you get there. Gotcha. Okay, good. So you've got your full five in rebuttal. Mr. Golombieski. Thank you, Your Honor. Very well, thank you. May it please the Court, Kevin Golombieski for the Attorney General. Counsel, before you get started, who are they supposed to sue? Well, it's their burden, of course, Your Honor, to identify a proper defendant. It's only our position that the Attorney General is not a proper defendant. It's not our position that there's no one to sue. We're just defending the judgment below that they lack standing as to the Attorney General. And to that point, I will note that there is currently a state court proceeding challenging Amendment 13, where the plaintiffs have sued the Department of Business and Professional Regulation. But I'm not in a position to opine on who would be a proper defendant for Article III purposes. Now, in our view, as some of you have noted in this argument today, Lewis and Jacobson are dispositive. So to your questions, Judge Newsom, there is no imminent threat of enforcement that's been pleaded in the complaint, and that's the key question here. The question before the district court and before this court is whether at the time plaintiffs filed their complaint, whether there was a standing as to the Attorney General. And counsel today has even recognized that plaintiffs did not know if the Florida legislature would ever enact criminal penalties. Well, but let me ask you a question, going to the argument that opposing counsel made. The amendment, when it was placed on the ballot, and obviously there's no determination of constitutionality when an amendment is placed on a Florida ballot. But that specific language did specify that the legislature shall specify civil or criminal penalties for violations of this section. So once the amendment passed, why did they have to wait to have those possible penalties enacted? So it's our view, Your Honor, that the legislation said civil or criminal, and so the legislature had discretion to enact either or. It was unclear which they would choose to pursue. And plaintiffs, it was plaintiffs' burden to offer up additional allegations showing that there was some kind of imminent likelihood, one, of passage of those penalties, and two, that the Attorney General or anyone else would seek to enforce them. And plaintiffs offered no allegations to that effect. And this underscores a more fundamental problem with their pleaded injury. Their pleaded injury is not a threat of prosecution. It's that as soon as Amendment 13 went into effect, their businesses were worthless. Their injury is flowing from passage rather than flowing from an action by the Attorney General. And under this Court and the Supreme Court's standing jurisprudence, they need to establish traceability to an act. And they've never identified any action by the Attorney General or threat of action that is causing their injury. And that's why the theories based on criminal penalties are so speculative. Let me ask you a question regarding the Attorney General's authority. Does the Attorney General have authority under the Florida Constitution to tell the State Attorneys throughout the State what to do and what to prosecute? No, Your Honor. Under Article 5, Section 17 of the Florida Constitution, State Attorneys are independent, locally elected officials who are the chief prosecuting officers and the exclusive prosecuting officers for their job. And what about the Office of Statewide Prosecutor, which is different because the Office of Statewide Prosecutor is part of the Attorney General's office, but it is a separate entity as well. Can you discuss that for us? Yes, Your Honor. So, as a threshold matter, we believe that theory has been waived. I know plaintiffs assert that it's merely a new argument, but what plaintiffs have advanced is a completely new jurisdictional basis. They're saying the statewide prosecutor is a source of their injuries now, the threat of prosecution by them, and that the new conduct at issue by the AG is her control over the statewide prosecutor. So that's not merely a new argument in advance of a jurisdictional position already staked out. It's a wholly new one. So that's waived. As a second matter, before this court would even have to wade into the Attorney General's authority over the statewide prosecutor, plaintiff's complaint fails to include any allegations that suggest they're engaging in conduct that come within the statewide prosecutor's statutorily prescribed limited jurisdiction. And as a result, they haven't made sufficient pleadings to establish any kind of legitimate threat of prosecution by the statewide prosecutor. But to get to the heart of your question, Judge Lagoa, the statewide prosecutor can be removed by the Attorney General, and he is appointed by the Attorney General, but it's a separate office, and it's a separate budget entity that's funded specifically by the Florida legislature, different from the Attorney General. And so while the relationship is different than the AG as to the state attorneys, I still don't think under this court's decision in Jacobson, there's a sufficient connection. Because and this gets to the heart of some of the problems with plaintiff's theory as to the state attorneys. What plaintiffs requested in their complaint is an order in joining Amendment 13. So to refrain from enforcement of that provision. But what they really seek with respect to the statewide prosecutor and to the state attorneys is an affirmative injunction saying that the AG needs to issue directives or guidance to these other independent state actors. And then the plaintiffs hope that those state actors would comply with that. But that's merely speculative. We don't know because those actors, just like the local supervisors of election in Jacobson, have dueling statutory and constitutional duties. And so that's the same type of problem that this court identified in Jacobson as preventing traceability and redressability. And one more point on that, I know plaintiffs assert that the laws are different here than in Jacobson, but they're actually very similar. So in Jacobson, the Secretary of State had authority to provide, quote, written direction to the local supervisors on how to implement election laws. And this court held that that's insufficient to establish traceability or redressability as to the Secretary of State. That's no different than this general superintendence and direction provision at issue here. But in this case, it's even weaker, the plaintiff's argument, because as you point out, Judge Lagoa, Article 5, Section 17 gives state attorneys authority on what offenses to and to not prosecute. And so the general superintendence and direction provision cannot be read as invading that and giving the Attorney General the power to stop them from enforcing laws as they see fit. And so Lewis and Jacobson dispose of the state attorney theory, the statewide prosecutor theory, the Department of Law Enforcement theory as well, even though this court need not even reach the Department of Law Enforcement statewide prosecutor theories because they're waived. And that leaves only the plaintiff's theory that they can sue the Attorney General because she's the state's chief legal officer. But Lewis is squarely on point there, where the plaintiffs allege that they could sue the Attorney General because he had the authority, the Attorney General of Alabama, because he had the authority to take civil actions to enforce state laws. And this court held that it proved entirely too much for that to serve as a basis for standing. Can I ask you a quick question? And I promise this is not a quiz show, it's not a gotcha. If you're not aware of it, it's totally fine. Two days ago, this court published an opinion in a case called Reproductive Health Services v. Strange. How, if you know now, and we can get supplemental briefing if you're not prepared to discuss it, but how does that affect the standing analysis here? I don't believe it affects it at all, Your Honor. So as a threshold matter, the court reasoned there that Jacobson was distinguishable because the state actor at play that enforced that parental consent law were state judges. And this court reasoned that, well, as a practical matter, state court judges are going to comply with an order of the Eleventh Circuit Court of Appeals because state courts are required to comply with federal law. Now, there might be a problem with that because . . . Is that as a matter of law or as a matter of practice, that state courts will follow what we say about federal law? They're required to or just sort of feel the moral pinch to do so? Well, they're not required to, particularly from this court. This is a powerful court, but the Supreme Court is the only law that can dictate to them what they should and should not do on matters of federal constitutional law. And it also was a practical analysis, a fact-specific practical analysis in that case, which distinguishes it, I believe, from here. And there's also, in our view, Jacobson is more on point because you had a Florida statewide official and a Florida local official that was at stake there. And in any event, even if Reproductive Women's Health did something different than Jacobson, prior panel precedent controls, of course, in this court. And so . . . Can I ask you a question? If we affirm the district court, what sort of preclusive effects is the other side going to have to worry about? So the governor has been . . . they brought the case against the governor and the governor has been dismissed. And if we agree that the case against the attorney general, under all the theories raised below, if we affirm on that, you've mentioned the theory of that there's some control over the Office of Statewide Prosecutor. Are we going to . . . is opposing counsel going to deal with a lot of preclusive effect if we affirm the district court? I don't believe so, Your Honor, because it will be a dismissal without prejudice. If this court reaches the issue, of course, of the attorney general's control over the Office of Statewide Prosecutor, that might have some preclusive effect just as a matter of precedent. But I don't believe so because this court's affirmance would be based on the specific allegations at the time of the plaintiff's complaint. And obviously, there's new facts that have developed that might be relevant to their understanding, given SB 4A and SB 8A. So I think as a matter of precedent, yes, Your Honor, but not as a matter of res judicata. And that's what we believe is the proper course, is that this court affirmed the dismissal without prejudice and plaintiffs can file a new complaint. They won't be . . . they'll have that opportunity to raise the new theories they've raised before this court as the statewide prosecutor and the Department of Law Enforcement, and then they can advance different theories related to the new legislation. And so unless the court has any additional questions, we'd ask that the court affirm the dismissal without prejudice. Thank you, Your Honors. Thank you very much. Ms. Breske, you have five minutes remaining. Thank you, Your Honor. I would just say that it is important to look at this from a policy standpoint, despite the fact res judicata may allow us to proceed now that we have the new legislation here. And I think if you look at the judge's order, it was based solely on Jacobson. It was based solely on the Secretary of State does not have the power to tell the supervisor of election what to do. And as I stated, I really think it's very clear that there is a law that would not allow the supervisor of election to take that direction from the Secretary of State. That is different in this case. The Attorney General by 1608 can tell the state attorney and provide direction. And if I could just read 1608, it says state attorneys are not independent because the Attorney General, I'm sorry, it says the Attorney General shall exercise a general superintendence and direction over the several state attorneys of the several circuits as to the manner of discharging their respective duties. And I think at the time that this came out, you have to step back and say, well, who would, you know, take care of this? And it makes sense that it's the Attorney General. And in Brown versus Butterworth from state court out of the fourth DCA, you have to go for the Attorney General. And so I think that it's a bad precedent to say the government can do whatever they want and can, you know, we can enact these amendments and we can make the plaintiffs not be able to have any access to court until they come up with a penalty as to who you're going to go after. It is reasonable and rational to sue the Attorney General. And when you look at the 11th Amendment and getting around that, you know, you've got to name somebody. And I think we survived that with Ex parte de Young. I think we survived that with the Article III, as we've discussed. And as far as waiver goes, just to comment on the waiver argument, I think this court does take notice of all of the laws and the statutes in existence. And so I don't think that that argument holds water. The plaintiffs have not raised any new issues for the first time. And we've not waived anything on appeal. I do believe it is in the interest of the public policy to not allow the government to do this and not have any redress until the government again acts. And for those reasons, we ask that you please reverse this and remand with an opportunity to amend. Thank you. Okay. Very well. Thank you so much. The case is submitted and court is adjourned. I typically say court is in recess until tomorrow morning. Court is adjourned.